UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| GEORGE MILLER and MICHAEL McAULEY, individually and on behalf of all others similarly situated, | Civil Action No.:8:22-cv-2142 |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| LINCARE HOLDINGS, INC. | |
| Defendant. | |

Plaintiffs George Miller and Michael McAuley ("Plaintiffs"), individually and on behalf of themselves and all others similarly situated (collectively "Class Members"), by and through their undersigned counsel, bring this class action against Lincare Holdings, Inc. ("Lincare," the "Company," or "Defendant").  Plaintiffs allege as follows upon personal knowledge as to the facts pertaining to themselves, and on information and belief as to all other matters.

## I.     SUMMARY OF THE ACTION

1.     Plaintiffs bring this class action against Defendant Lincare for damages arising from a cyber-security attack and data breach caused by the Company's failure to adequately safeguard and secure their private, confidential information – personally identifiable information ("PII") and personal health information ("PHI").  The data breach also impacted and caused damages to tens of thousands of other individuals who entrusted such information to Defendant Lincare.  Defendant was required to, but did not, protect its customers' PII and PHI from unauthorized disclosure.

2.     On information and belief, on or about September 26, 2021, Defendant discovered that unauthorized third parties gained access to Lincare's database and information system, which included patient files containing PII and/or PHI accessed by cyber-thieves in September 2021 (the "Lincare Data Breach" or "Data Breach").[1]

3.     The PII and PHI that was exposed in the Data Breach included highly sensitive and potentially highly valuable information of the type that is well-known within the broad healthcare industry to be highly valued by hackers who prey upon and use or sell such private information for profit and/or to facilitate fraud and identity theft, as more fully discussed below.

4.     Although the Data Breach was discovered on or about September 26, 2021, it was not until June 2022 that Lincare began providing notice directly to consumers that their PII and PHI had been accessed.  Plaintiffs Miller and McAuley were not notified of the Data Breach, or otherwise did not learn of the Data Breach, until August 2022, eleven (11) months after Lincare first discovered the Data Breach.  Thus far, there has been no credible explanation as to why it

---

[1] https://www.lincare.com/-/media/project/lincare/files/security_notice.pdf (last visited September 13, 2022).

took Lincare over eight (8) months to even begin disclosing the Data Breach to its customers or why it took Lincare eleven (11) months to disclose the Data Breach to Plaintiffs. This substantial delay in notifying victims of the Lincare Data Breach prevented Plaintiffs and similarly situated Class Members from taking affirmative steps to protect their PII and PHI during the over 8-month interval of time. Indeed, Plaintiffs and Class Members were wholly unaware of the Data Breach until they learned or received letter(s) from Defendant so informing them, of the Data Breach in August 2022.

5.    Plaintiff Miller learned of the Data Breach and that his PII and/or PHI was exposed in the Data Breach in August 2022. Although Lincare told Plaintiff Miller that he should have received a Notice of Security Incident by letter, no such letter was provided to Plaintiff Miller. But, he called Lincare after he learned of the Data Breach and Lincare told him that he was a victim of the Data Breach.

6.    Plaintiff McAuley received Defendant's Notice of Security Incident by letter dated on or about August 30, 2022, as more fully noted in Exhibit A attached hereto.

7.    Plaintiffs and Class Members entrusted their sensitive confidential information to Defendant – a company engaged in healthcare related sales and activities – which information was compromised and unlawfully accessed during the Data Breach. Confidential PII and PHI information remains in the possession of Defendant, despite the fact that it was accessed by unauthorized third persons and is currently being maintained without appropriate and necessary safeguards, and oversight, and therefore remains vulnerable to additional hackers and theft.

8.    Defendant maintained Class Members' PII and PHI on its computer networks in a condition that was vulnerable to cyber-attacks. The risk of cyber-attack was well-known to Defendant – and to all healthcare related providers and services – and Defendant was continuously on notice at all times material that its failure to take steps necessary to secure the PII and/or PHI from a risk of cyber-attack and unauthorized access left that information and property in a dangerous position that was vulnerable to theft. Defendant was unquestionably aware that data thieves, once armed with PII and/or PHI that they accessed in a data breach, are capable of pursuing numerous types of misconduct and crimes through the unauthorized use and exploitation of that

data, including opening new financial accounts in Class Member's names, taking loans in their names, using their names to obtain medical services, obtain government benefits, file fraudulent tax returns in order to get refunds to which they are not even entitled, and numerous other assorted acts of thievery and fraud.

9.     In fact, this was not the first time Lincare experienced a cyber-attack.  In February 2017, Lincare notified current and former Lincare employees of a "phishing attack" in which personal file information may have been compromised.  Following this event, Defendant was on clear and unambiguous notice that it maintained information on its data networks and systems that was highly valuable and sought after by cyber criminals and other unauthorized individuals who could and would attempt to use the information for profit.

10.     Nevertheless, and despite this knowledge, Defendant continuously disregarded the rights of Plaintiffs and Class Members by, among other things, intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure that its data systems were appropriately protected and safeguarded against unauthorized intrusions, while failing to disclose that it did not have adequately robust computer systems and security safeguards or practices in place with respect to protecting against the risk of unauthorized access of PII and/or PHI. Defendant further failed to take standard and reasonably available steps to prevent the Lincare Data Breach and failed to properly train its staff and employees on proper security measures. Defendant and its employees failed to properly monitor the computer network systems on which it stored the PII and/or PHI and, had they done so, would have discovered the intrusion sooner, and could have prevented cyber-thieves from freely accessing Defendant's IT network for such a substantial period of time.  The Lincare Data Breach was a direct result of Defendant's failures and misconduct.

11.     Notably, Defendant also failed to provide Plaintiffs and Class Members with prompt and timely notice of the Lincare Data Breach, thereby further injuring them by such delay.

12.     As a result of Defendant's misconduct, Plaintiffs' and Class Members' identities are now at risk.  Their PII and/or PHI that was collected and maintained by Defendant without

adequate safeguards is now in the hands of ill-intentioned cyber thieves – a present and ongoing risk that will continue for years to come.

13.    Plaintiffs and Class Members have been exposed to a present and eminent risk of fraud and identity theft and must now and in the future closely monitor their financial accounts and other records to guard against such risk and injury.

14.    To that end, Plaintiffs and Class Members will necessarily have to incur out-of-pocket costs to purchase credit monitoring services and take other protective measures to detect and deter identity theft.

15.    Plaintiffs seek to remedy these harms on behalf of themselves and all similarly situated individuals who are Class Members, and further seek remedies that include, but are not limited to, compensatory damages, nominal damages and reimbursement of out-of-pocket costs, as well as injunctive and equitable relief to prevent future injury on behalf of themselves and the putative class.

16.    Plaintiffs also seek to hold Defendant responsible for not ensuring that the PII and PHI was maintained in a manner consistent with industry, the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") Privacy Rule (45 CFR, Parts 160 and 164(A) and (E)), the HIPAA Security Rule (45 CFR, Parts 160 and 164(A) and (C)), and other relevant standards.

## II.    PARTIES

### Plaintiffs

17.    Plaintiff George Miller is, and at all times mentioned herein was, a resident of the state of New York, residing in Glens Falls, New York.  Plaintiff Miller purchased and received healthcare related products and related services from Lincare and provided PII and PHI information that was shared with Lincare as a consequence of its services.  Plaintiff Miller has been notified of the Data Breach and that his PII and/or PHI was compromised.

18.    Plaintiff Michael McAuley is, and at all times mentioned herein was, a resident of the state of Texas, residing in Nacogdoches, Texas.  Plaintiff McAuley purchased and received healthcare related products and related services from Lincare and provided PII and PHI information that was shared with Lincare as a consequence of its services.  Plaintiff McAuley has

been notified of the Data Breach and that his PII and/or PHI was compromised, having received a written Notice of the Data Breach, Exhibit A hereto, dated August 30, 2022.

**Defendant**

19.     Defendant Lincare is a Delaware corporation with its principal place of business located at 19387 US 19 N., Clearwater, Florida 33764.

20.     The true names and capacities of persons or entities, whether individual, corporate, associate, or otherwise, who may be responsible for some of the claims alleged herein are currently unknown.  Plaintiffs will seek leave of court to amend this Complaint to reflect the true names and capacities of such other responsible parties when their identities become known.

## III.    JURISDICTION AND VENUE

21.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because the matter in controversy, exclusive of interest and costs, exceeds the sum value of $5,000,000.00, consists of putative class membership of greater than 100 members, and is a class action in which some of the members of the Class, are citizens of states different than that of Defendant.

22.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant is authorized to conduct business within this District, is headquartered in this District, has intentionally availed itself of the laws in this District, and conducts substantial business, including acts underlying the allegations of this complaint, in this District.

## IV.    FACTUAL ALLEGATIONS

**Lincare's Business**

23.     Defendant Lincare offers a variety of medical products and services, such as cardiac monitoring services, durable medical equipment, oxygen therapy, nebulizer therapy, pharmacy services, and more.  Its mission is "to set the standard for excellence, transforming the way

respiratory care is delivered in the home."[2]  Defendant's operation includes dozens of subsidiaries and partners across North America.

24.    Plaintiffs and Class Members paid for and received health-related products or other services from Lincare, and thereby entrusted Lincare with their PII and PHI.

25.    Defendant Lincare maintained PII and PHI and financial information which it had a duty to adequately secure from unauthorized disclosure.

26.    As a condition of entering into a relationship with Plaintiffs and other Class members, Lincare required that they provide and entrust Defendant with their highly sensitive and confidential PII and PHI which it, in turn, stored on its system that was ultimately affected by the Data Breach.

27.    In securing such information as a condition of forming a relationship with Plaintiffs and Class Members, and storing on its database, Defendant assumed legal and equitable duties. Additionally, it knew and should have known that it was responsible for protecting such private information from unauthorized disclosure.

28.    At all times material, Defendant was aware of the fact that the healthcare industry and affiliated entities were at risk of experiencing cyber-security attacks and data breaches as many have occurred throughout the United States.  Given Defendant's maintenance of such highly sensitive PII and/or PHI and its knowledge of such risk and its duties, Defendant was responsible for safeguarding the PII and PHI in its possession with respect to each Plaintiff and Class Member.

29.    The Data Breach could have been prevented had Defendant properly secured and encrypted and/or more securely encrypted its servers generally, as well as Plaintiffs' and Class Members' private and health information which Defendant stored within its computer systems.

_____

[2]https://www.lincare.com/en/#:~:text=Lincare's%20mission%20is%20to%20set,we%20are%20caring%20for%20them (last visited September 12, 2022).

Defendant was certainly on notice of trending data breach attacks over the past several years as well as the prior attack against Lincare itself, which only exacerbates its own negligence in failing to safeguard Plaintiffs' and Class Members' confidential private and health information.

30.     Furthermore, Defendant knew or should have known of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") Breach Notification Rule, 45 CFR §§ 164.400-414, which required Lincare to provide notice of the breach to each affected individual "without unreasonable delay and in no case later than 60 days following discovery of the breach." However, Defendant wholly failed to abide by this requirement, as more fully discussed herein.

31.     HIPAA establishes national minimum standards for the protection of individuals' medical records and other personal health information. HIPAA, generally, applies to health plans/insurers, health care clearinghouses, and those health care providers that conduct certain health care transactions electronically, and sets minimum standards for Defendant's maintenance of Plaintiff's and Class Members' PHI/PII. More specifically, HIPAA requires appropriate safeguards be maintained by organizations such as Defendant to protect the privacy of personal health information and sets limits and conditions on the uses and disclosures that may be made of such information without customer/patient authorization. HIPAA also establishes a series of rights over Plaintiff's and Class Members' PHI/PII, including rights to examine and obtain copies of their health records, and to request corrections thereto.

32.     Additionally, the HIPAA Security Rule establishes national standards to protect individuals' electronic personal health information that is created, received, used, or maintained by a covered entity. The HIPAA Security Rule requires appropriate administrative, physical, and technical safeguards to ensure the confidentiality, integrity, and security of electronic protected health information.

**The Data Breach**

33.     In or around September 2021, unauthorized third parties infiltrated and gained access to Lincare's computer database and, as a result, obtained access to highly sensitive PII and PHI of Lincare's customers.  The PII and PHI that was exposed included Lincare customers' first and last names, addresses, Lincare account numbers, dates of birth, medical information, which may include information concerning medical treatments individuals received such as provider name, dates of service, diagnosis/procedure, and/or account or record numbers, health insurance information, and/or prescription information.[3]   Certain patients' Social Security numbers may have also been impacted.[4]

34.     Plaintiffs Miller and McAuley were not notified, or did not otherwise learn, of the Data Breach until August 2022.  It took Defendant over 8 months since it first discovered the Data Breach on September 26, 2021, before it began notifying Class Members, and it took Defendant eleven (11) months before it notified Plaintiffs.

35.     Lincare did not take necessary and adequate steps to safeguard the PHI/PII which was maintained on its systems and data banks and, was even more egregiously, delayed giving notice to Plaintiffs and other Class Members for over 8 months (and in the case of Plaintiffs Miller and McAuley, some 11 months) after initially discovering the Data Breach no later than September 26, 2021.

36.     Additionally, the Defendant has still failed to report the total number of affected individuals.  Though it has reported to the Massachusetts Attorney General that the Data Breach

---

[3] https://www.lincare.com/-/media/project/lincare/files/security_notice.pdf (last visited September 13, 2022).

[4] *Id*.

compromised the PII/PHI of 172,052 individuals, Plaintiffs are informed and believe and thereupon allege that the number of affected individuals is actually higher.

37.    Defendant has also reported to Attorney Generals for the states of Montana, New Hampshire, Texas and Washington.  And, in that regard, it has disclosed that names, Social Security Numbers, driver's license numbers, and medical health insurance information has been compromised.  With regard to residents of the State of Texas, it has disclosed that just in Texas, at least 115,394 Texans have been compromised.

38.    The unauthorized third-party hacking of Plaintiffs' and Class Members' PII and PHI was done with the intent of engaging in the misuse of and profiteering from the sale or exploitation of that information.  Meanwhile, Lincare continues to have obligations created by HIPAA, state data breach notification laws, industry standards, common law, state statutory law and its own insurances and representations to Plaintiffs and Class Members.

39.    Defendant's untimely and delayed notice itself created significant harm and heightened risk to Plaintiffs and other Class Members.  Time is of the essence whenever highly sensitive PHI/PII has been accessed or acquired by cyber criminals or other unauthorized persons or entities.  Plaintiffs are informed and believe and allege the acquired data is a consequence of the Data Breach and has been made available to others on the dark web.

40.    As a result, Plaintiffs and Class Members have been subjected to the present and continuing risk of fraud, identity theft and misuse resulting from the possible publication exfiltration other PHI/PII, and especially in regard to social security numbers and sensitive medical information given that hackers can access and then offer for sale their unencrypted, unredacted private information to criminals.

41.    Facing the real threat of identity theft, and heightened risk of misuse of their PII and PHI, Defendant has now also burdened Plaintiffs and Class Members with having to seek out

and enroll in credit monitoring services in order to protect themselves. But such protection has been severely undermined by Defendant's delay and untimely notice for over 8 months.

42.    The cyber-attack occurred as a direct and proximate result of Defendant's failure to prevent the Data Breach and its failure to adhere to commonly accepted securities standards and otherwise failed to detect that its data bases were subject to a security breach.

43.    The significant risk of a cyber-attack and data breach was unquestionably foreseeable to Defendant. Defendant was on notice of the risk for such a data breach, but despite this knowledge, failed to implement adequate data security measures, thereby leaving its patients' PII and PHI at risk of exposure to ill-intentioned criminals.

**Plaintiffs' and Class Members' Damages**

44.    At all relevant times, Defendant knew, or reasonably should have known, of the importance of adequately safeguarding its customers' PII and PHI and of the foreseeable consequences if its data security measures, or agent's data security systems were breached, including the significant costs that would be imposed on Plaintiffs and the Class as a result of the breach.

45.    As a direct and proximate result of Defendant's conduct, Plaintiffs and the other Class Members have been placed at an imminent, immediate, and continuing increased risk of harm from fraud and identity theft. They must be vigilant and review their credit reports for suspected incidents of identity theft, and educate themselves about security freezes, fraud alerts, and other steps to protect themselves against identity theft. This ongoing need for monitoring for identity theft and fraud will extend indefinitely into the future.

46.    Plaintiffs and the other Class Members have suffered and will suffer actual injury due to loss of time and increased risk of identity theft as a direct result of the Data Breach. In addition to any fraudulent charges, loss of use of and access to their account funds, costs associated with their inability to obtain money from their accounts, diminution of value of the data, and damage to their credit, Plaintiffs and the other Class Members suffer ascertainable losses in the

form of out-of-pocket expenses, opportunity costs, and the time and costs reasonably incurred to remedy or mitigate the effects of the Data Breach.

47.    Moreover, Plaintiffs and the other Class Members have an interest in ensuring that Defendant implement reasonable security measures and safeguards to maintain the integrity and confidentiality of the PII, and PHI, including making sure that the storage of data or documents containing PII or PHI is not accessible by unauthorized persons and that access to such data is sufficiently protected.

48.    In addition to the remedy for economic harm, Plaintiffs and the Class Members maintain an undeniable and continuing interest in ensuring that the PII and PHI remains in the possession of Defendant is secure, remains secure, and is not subject to future theft.

### Plaintiff Miller's Experience0

49.    Beginning in and around December 2020 and through at least August 2021, Plaintiff Miller received medical care equipment and devices from Lincare that it delivered to him and invoiced him for a portion of the cost.   Lincare received Plaintiff Miller's PHI/PII in connection with its services and any follow-on healthcare related services.

50.    Plaintiff Miller typically takes measures to protect his PII and PHI and is very careful about sharing his PII and PHI.  He has never knowingly transmitted unencrypted PII and PHI over the internet or other unsecured source.

51.    Plaintiff Miller typically stores documents containing his PII and PHI in a safe and secure location.  He also diligently chooses unique usernames and passwords for his online accounts.

52.    As a result of the Data Breach, Plaintiff Miller has suffered a loss of time and has spent and continues to spend a considerable amount of time on issues related to this Data Breach. He monitors accounts and credit scores and has sustained emotional distress as a result of worrying about his PII and PHI being exfiltrated.  He has monitored his account extensively since receiving the Notice of Data Breach from Defendant and intends to spend time taking steps to protect his PII and PHI.  This is time that was and will be lost and unproductive and taken away from other activities and duties.

53.     Plaintiff Miller has suffered, and will continue to suffer, lost time, annoyance, interference, and inconvenience as a result of the Data Breach and has anxiety, emotional distress, and increased concerns for the loss of their privacy.

54.     As a result of the Data Breach and the exfiltration of his unencrypted PII and PHI in the hands of criminals, Plaintiff is at a substantial present risk and will continue to be at an increased risk of identity theft and fraud for years to come.

55.     To date, Defendant has done little to adequately protect Plaintiff and Class Members, other than informing them of the availability of free credit reports.  Defendant has done nothing to compensate them for their injuries sustained from this Data Breach.

<u>**Plaintiff McAuley's Experiences**</u>

56.     Beginning in and around August 2017 and through at least November 2018, Plaintiff McAuley received medical care equipment and devices from Lincare that it delivered to him and invoiced him for a portion of the cost.  Lincare received Plaintiff McAuley's PHI/PII in connection with its services and any follow-on healthcare related services.

57.     Plaintiff McAuley typically takes measures to protect his PII and PHI and is very careful about sharing his PII and PHI.  He has never knowingly transmitted unencrypted PII and PHI over the internet or other unsecured source.

58.     Plaintiff McAuley typically stores documents containing his PII and PHI in a safe and secure location.  He also diligently chooses unique usernames and passwords for his online accounts.

59.     As a result of the Data Breach, Plaintiff McAuley has suffered a loss of time and has spent and continues to spend a considerable amount of time on issues related to this Data Breach.  He also has obtained a credit protection and monitoring service, at a cost of $7.50/ month, monitors his accounts and his credit scores and has sustained emotional distress as a result of worrying about his PII and PHI being exfiltrated.  He has monitored his account extensively since receiving the Notice of Data Breach from Defendant and intends to spend time taking steps to protect his PII and PHI.  This is time that was and will be lost and unproductive and taken away from other activities and duties.

60.     Plaintiff McAuley has suffered, and will continue to suffer, lost time, annoyance, interference, and inconvenience as a result of the Data Breach and has anxiety, emotional distress, and increased concerns for the loss of their privacy.

61.     As a result of the Data Breach and the exfiltration of his unencrypted PII and PHI in the hands of criminals, Plaintiff is at a substantial present risk and will continue to be at an increased risk of identity theft and fraud for years to come.

62.     To date, Defendant has done little to adequately protect Plaintiff and Class Members, other than informing them of the availability of free credit reports.  Defendant has done nothing to compensate them for their injuries sustained from this Data Breach.

**Medical Records Are Particularly Valuable to Hackers**

63.     Medical records are uniquely valuable to hackers.  Indeed, hackers prey on medical/healthcare entities.  And healthcare providers such as Lincare have been aware of this for a number of years and the need to take adequate measures to secure their systems and information. In 2018 alone, over 400 breaches targeting medical data were reported to the Inspector General of the Department of Health and Human Services.[5] That figure represented a substantial increase from the year before. The steady growth of hacks of healthcare entities is no surprise and can be tied to two significant factors, (1) the failure of healthcare entities, like Lincare, to adequately protect patient data and (2) the substantial value of medical records, which include a broad range of PII and PHI.    The high value placed on medical records is, according to the head of

---

[5]     https://www.cbsnews.com/news/hackers-steal-medical-records-sell-them-on-dark-web/ and https://www.advisory.com/en/daily-briefing/2019/03/01/hackers (last visited on September 13, 2022).

investigations at the HHS Office of Inspector General, a reflection of the "treasure trove" of data contained within them.[6]

64.    In 2019, a record 1,473 data breaches occurred, resulting in approximately 164,683,455 sensitive records being exposed, a 17% increase from 2018.[7] Of the 1,473 recorded data breaches, 525 of them, or 35.64%, were in the medical or healthcare industry.[8] The 525 reported breaches reported in 2019 exposed nearly 40 million sensitive records (39,378,157), compared to only 369 breaches that exposed just over 10 million sensitive records (10,632,600) in 2018. These incidents continue to rise in frequency, with an estimated 1,862 data breaches occurring in 2021.[9]

65.    Cyber criminals seek out PHI at a greater rate than other sources of personal information.  In a 2022 report, the healthcare compliance company Protenus found that there were 905 medical data breaches in 2021 with over 50 million patient records exposed.[10]  This is an increase from the 758 medical data breaches which exposed approximately 40 million records that Protenus compiled in 2020.[11]  American companies are estimated to have spent over $19 billion on acquiring personal data of consumers in 2018.[12]  It is so valuable to identity thieves that once

---

[6]    https://www.cbsnews.com/news/hackers-steal-medical-records-sell-them-on-dark-web/ (last visited on September 13, 2022).

[7]    01.28.2020_ITRC_2019-End-of-Year-Data-Breach-Report_FINAL_Highres-Appendix.pdf (idtheftcenter.org) (last visited on September 13, 2022).

[8]    *Id.*

[9]    *Id.*

[10]    PROTENUS, *2022 Breach Barometer*, PROTENUS.COM, https://www.protenus.com/breach-barometer-report (last visited September 13, 2022).

[11]    *Id.*

[12]    *U.S. Firms to Spend Nearly $19.2 Billion on Third-Party Audience Data and Date-Use Solutions in 2018, Up 17.5% from 2017,* INTERACTIVE ADVERTISING BUREAU (Dec. 5, 2018), https://www.iab.com/news/2018-state-of-data-report.

PII/PHI has been disclosed, criminals often trade it on the "cyber black-market," or the "dark web," for many years.

66.     The continued vulnerability of the healthcare industry to hacking is widely recognized within the healthcare industry.  An article published on the website of Advisory Board, a company that advises healthcare providers, health insurance companies and others on issues critical to the healthcare industry, recognized that "the cyber threats we face are growing in sophistication and magnitude and becoming more difficult to combat."[13] The article further noted that "[a]s a result, every healthcare organization needs to have a strong strategy in place to mitigate cyber risk."

67.     Large healthcare providers like Lincare are well aware of the risk that data breaches pose to consumers, especially because both the size of Lincare's patient base and the fact that the PHI and PII that they collect and maintain from their patients is profoundly valuable to hackers. A 2017 survey by Accenture determined that 50% of healthcare data breach victims eventually suffered medical identity theft, resulting in an average of $2,500 in out of pocket costs per patient.[14] That same survey also highlighted the importance of rapid disclosure of healthcare data breaches as it noted that "half of the survey respondents reported that they learned of the breach themselves – as opposed to an official company or law enforcement notification – after they had been alerted to an error on their benefits explanation, credit card statement, or similar documents."[15]

---

[13]     https://www.advisory.com/en/daily-briefing/2019/03/01/hackers, (last visited on September 13, 2022).

[14]     Top 10 Biggest Healthcare Data Breaches of All Time | Digital Guardian, last visited on September 13, 2022.

[15]     *Id.*

68.     Even where hacked healthcare data is not used to steal identities, its theft poses substantial harm to consumers.   In February 2021, hackers published "extensive" patient information hacked from two U.S. hospital groups in an extortion effort.[16]  The hackers made off with "tens of thousands of files containing patients' personal medical information" from just eleven hospitals.[17] In that breach, detailed medical data was posted, unencrypted, on the dark web including "at least tens of thousands of scanned diagnostic results and letters to insurers.  One folder contains background checks on hospital employees.   An Excel document titled 2018_colonoscopies has 102 full names, dates and details of the procedures, and a field to mark "yes" or "no" to whether the patient has a 'normal colon.'"[18]  Such public posting of confidential PHI and PII is part of a trend to extort money from healthcare providers and/or individual patients, posting detailed medical records and other PII or PHI if victims refuse to pay.

### Lincare's Failure to Protect Consumer PII and PHI Violates HIPAA

69.     Companies in the Healthcare related business and services such as Lincare are bound by the HIPAA Privacy Rule, 45 CFR §§ 160, 164, which protects all "*individually identifiable health information,*" or PHI "held or transmitted by a covered entity or its business associate, in any form or media, whether electronic, paper, or oral." PHI includes:

> . . . information that is a subset of health information, including demographic information collected from an individual, and:
>
> (1) Is created or received by a healthcare provider, health plan, employer, or health care clearinghouse; and
>
> (2) Relates to the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual; and

---

[16]     https://www.nbcnews.com/tech/security/hackers-post-detailed-patient-medical-records-two-hospitals-dark-web-n1256887, last visited on September 13, 2022.

[17]     https://hacked.com/hackers-medical-records/, last visited on September 13, 2022.

[18]     Hackers post detailed patient medical records from two hospitals to the dark web (nbcnews.com), last visited on September 13, 2022.

(i) That identifies the individual; or

(ii) With respect to which there is a reasonable basis to believe the information can be used to identify the individual and that identifies the individual or for which there is a reasonable basis to believe it can be used to identify the individual. Individually identifiable health information includes many common identifiers (e.g., name, address, birth date, Social Security Number).

45 CFR § 160.103. The privacy rule requires that covered entities, including healthcare providers like Defendant, provide sufficient safeguards to protect the privacy of the PHI entrusted to them by patients. Entities covered by the HIPAA Privacy Rule are required to report breaches of unsecured health information to the Secretary of Housing and Human Services ("HHS") as soon as possible after discovery of the breach. 45 CFR § 164.408. Here, Plaintiffs are informed and believe and thereon allege that if Lincare reported the breach to HHS, it would not have reported the breach to HHS sooner than the same day that Defendant publicly acknowledged the Data Breach, despite acknowledging that they initially discovered the Data Breach over 8 months earlier.

70.    HIPAA establishes national minimum standards for the protection of individuals' medical records and other personal health information. HIPAA, generally, applies to health plans/insurers, health care clearinghouses, and those health care providers that conduct certain health care transactions electronically, and sets minimum standards for Defendant's maintenance of Plaintiffs' and Class Members' PHI/PII. More specifically, HIPAA requires appropriate safeguards be maintained by organizations such as Defendant to protect the privacy of personal health information and sets limits and conditions on the uses and disclosures that may be made of such information without customer/patient authorization. HIPAA also establishes a series of rights over Plaintiffs' and Class Members' PHI/PII, including rights to examine and obtain copies of their health records, and to request corrections thereto.

71.    Additionally, the HIPAA Security Rule establishes national standards to protect individuals' electronic personal health information that is created, received, used, or maintained by a covered entity. The HIPAA Security Rule requires appropriate administrative, physical, and technical safeguards to ensure the confidentiality, integrity, and security of electronic protected health information.

## **Industry Standards for Data Security**

72.     Considering the numerous high-profile data breaches targeting companies like Anthem Health Care, Target, Neiman Marcus, eBay, Anthem, Deloitte, T-Mobile, and Equifax, Defendant is, or reasonably should have been, aware of the importance of safeguarding PII and PHI, as well as of the foreseeable consequences of its systems being breached.

73.     Security standards commonly accepted among businesses that store PII and PHI using the internet include, without limitation:

    a.     Maintaining a secure firewall configuration;

    b.     Monitoring for suspicious or irregular traffic to servers;

    c.     Monitoring for suspicious credentials used to access servers;

    d.     Monitoring for suspicious or irregular activity by known users;

    e.     Monitoring for suspicious or unknown users;

    f.     Monitoring for suspicious or irregular server requests;

    g.     Monitoring for server requests for PII and PHI;

    h.     Monitoring for server requests from VPNs; and

    i.     Monitoring for server requests from Tor exit nodes.

74.     The U.S. Federal Trade Commission ("FTC") publishes guides for businesses for cybersecurity and protection of PII and PHI which includes basic security standards applicable to all types of businesses.

75.     The FTC recommends that businesses:

    a.     Identify all connections to the computers where you store sensitive information.

    b.     Assess the vulnerability of each connection to commonly known or reasonably foreseeable attacks.

    c.     Do not store sensitive consumer data on any computer with an internet connection unless it is essential for conducting their business.

    d.     Scan computers on their network to identify and profile the operating system and open network services. If services are not needed, they should

be disabled to prevent hacks or other potential security problems. For example, if email service or an internet connection is not necessary on a certain computer, a business should consider closing the ports to those services on that computer to prevent unauthorized access to that machine.

e.   Pay particular attention to the security of their web applications—the software used to give information to visitors to their websites and to retrieve information from them. Web applications may be particularly vulnerable to a variety of hack attacks.

f.   Use a firewall to protect their computers from hacker attacks while it is connected to a network, especially the internet.

g.   Determine whether a border firewall should be installed where the business's network connects to the internet. A border firewall separates the network from the internet and may prevent an attacker from gaining access to a computer on the network where sensitive information is stored. Set access controls—settings that determine which devices and traffic get through the firewall—to allow only trusted devices with a legitimate business need to access the network. Since the protection a firewall provides is only as effective as its access controls, they should be reviewed periodically.

h.   Monitor incoming traffic for signs that someone is trying to hack in. Keep an eye out for activity from new users, multiple log-in attempts from unknown users or computers, and higher-than-average traffic at unusual times of the day.

i.   Monitor outgoing traffic for signs of a data breach. Watch for unexpectedly large amounts of data being transmitted from their system to an unknown user. If large amounts of information are being transmitted from a business' network, the transmission should be investigated to make sure it is authorized.

19

76.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer information, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

77.     Because Defendant was entrusted with patients and members' PII and PHI, it had, and has, a duty to patients and members to keep their PII and PHI secure.

78.     Patients, such as Plaintiffs and Class Members, reasonably expect that when their PII and PHI is provided to Defendant, it will safeguard their PII and PHI.

79.     Nonetheless, Defendant failed to prevent the Data Breach discussed below. Had Defendant properly maintained and adequately protected its systems, it could have prevented the Data Breach.

## V.     CLASS ALLEGATIONS

80.     Pursuant to Fed. R. Civ. P. 23(b)(1), (b)(2), (b)(3), and (c)(4), Plaintiffs seek to bring this class action on behalf of themselves and a Class (the "Class") defined as follows:

**Nationwide Class**: All residents of the United States whose PII or PHI was accessed or otherwise compromised as a result of the Data Breach.

81.     Plaintiff Miller also seeks certification of a New York Class defined as follows:

**New York Class:** All residents of the state of New York whose PII or PHI was accessed or otherwise compromised as a result of Data Breach.

82.     Plaintiff McAuley seeks certification of a Texas Class defined as follows:

**Texas Class:** All residents of the state of Texas whose PII or PHI was accessed or otherwise compromised as a result of Data Breach.

83.     Members of the Nationwide Class, the New York Class, and the Texas Class are referred to herein collectively as "Class Members" or "Class."

84.     Excluded from the Class are Defendant, any entity in which Defendant has a controlling interest, Defendant's officers, directors, legal representatives, successors, subsidiaries,

and assigns. Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

85.    The proposed Class meets the requirements of Fed. R. Civ. P. 23(a), (b)(1), (b)(2), (b)(3), and (c)(4).

86.    **Numerosity**: While the exact number of members of the Class is unknown at this time, Plaintiffs are informed and believe and thereupon allege that the number of "persons affected" by the Data Breach is in the tens of thousands making joinder of each individual Class Member impracticable. Ultimately, members of the Class will be easily identified through Defendant's records.

87.    **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiffs and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include:

   a)  Whether Defendant failed to adequately safeguard Plaintiffs' and the Class Members' PII and PHI;

   b)  Whether Defendant failed to protect Plaintiffs' and the Class Members' PII and PHI, as promised;

   c)  Whether Defendant's computer system systems and data security practices used to protect Plaintiffs' and the Class Members' PII and PHI violated HIPAA, federal, state, and local laws, or Defendant's duties;

   d)  Whether Defendant engaged in unfair, unlawful, or deceptive practices by failing to safeguard Plaintiffs' and the Class Members' PII and PHI properly and/or as promised;

   e)  Whether Defendant violated the consumer protection statutes, data breach

notification statutes, state unfair insurance practice statutes, state insurance privacy statutes, and state medical privacy statutes applicable to Plaintiffs and each Class Member;

f) Whether Defendant failed to notify Plaintiffs and Class Members about the Data Breach as soon as practical and without delay after the Data Breach was discovered;

g) Whether Defendant acted negligently in failing to safeguard Plaintiffs' and the Class Members' PII and PHI;

h) Whether Defendant was contractually bound to protect the confidentiality of Plaintiffs' PII and PHI and have reasonable security measures;

i) Whether Defendant's conduct described herein constitutes a breach of its contracts;

j) Whether Plaintiffs and the Class Members are entitled to damages as a result of Defendant's wrongful conduct;

k) Whether Plaintiffs and the Class Members are entitled to restitution as a result of Defendant's wrongful conduct;

l) What equitable relief is appropriate to redress Defendant's wrongful conduct; and

m) What injunctive relief is appropriate to redress the imminent and currently ongoing harm faced by Plaintiffs and Class Members.

88.     **Typicality**: Plaintiffs' claims are typical of the claims of the members of the Class. Plaintiffs and the Class Members sustained damages as a result of Defendant's uniform wrongful conduct during transactions with them.

89.    **Adequacy**: Plaintiffs will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex litigation and class actions.  Plaintiffs have no interests antagonistic to those of the Class, and there are no defenses unique to Plaintiffs.  Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the members of the proposed Class and have the financial resources to do so.  Neither Plaintiffs nor their counsel have any interest adverse to those of the other members of the Class.

90.    **Risks of Prosecuting Separate Actions**: This case is appropriate for certification because prosecution of separate actions would risk either inconsistent adjudications which would establish incompatible standards of conduct for the Defendant or would be dispositive of the interests of members of the proposed Class. Furthermore, Lincare's database that contained Plaintiffs' and Class Members' PII and PHI still exists and is still vulnerable to future attacks – one standard of conduct is needed to ensure the future safety of Lincare's database.

91.    **Policies Generally Applicable to the Class**: This case is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Plaintiffs and proposed Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct towards members of the Class and making final injunctive relief appropriate with respect to the proposed Class as a whole. Defendant' practices challenged herein apply to and affect the members of the Class uniformly, and Plaintiffs' challenge to those practices hinges on Defendant's conduct with respect to the proposed Class as a whole, not on individual facts or law applicable only to Plaintiffs.

92.    **Superiority**: This case is also appropriate for certification because class proceedings are superior to all other available means of fair and efficient adjudication of the claims of Plaintiffs and the members of the Class. The injuries suffered by each individual member of the Class are relatively small in comparison to the burden and expense of individual prosecution of the litigation necessitated by Defendant's conduct. Absent a class action, it would be virtually impossible for individual members of the Class to obtain effective relief from Defendant. Even if Class Members could sustain individual litigation, it would not be preferable to a class action

because individual litigation would increase the delay and expense to all parties, including the Court, and would require duplicative consideration of the common legal and factual issues presented here. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single Court.

93.    **Manageability**: Plaintiffs are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

94.    The Class may be certified pursuant to Rule 23(b)(2) because Defendant has acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief appropriate with respect to the claims raised by the Class.

95.    The Class may also be certified pursuant to Rule 23(b)(3) because questions of law and fact common to the Class will predominate over questions affecting individual members, and a class action is superior to other methods for fairly and efficiently adjudicating the controversy and causes of action described in this Complaint.

96.    Particular issues under Rule 23(c)(4) are appropriate for certification because such claims present particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein.

**VI.    CAUSES OF ACTIONS**

**COUNT I**

**Negligence**
**(On Behalf of Plaintiffs and the Nationwide Class)**

97.    Plaintiffs re-allege and incorporate the allegations contained in paragraphs 1 through 96, above, by reference.

98.    Plaintiffs and Class Members were required to submit PII and PHI to healthcare providers, including Defendant, in order to obtain insurance coverage and/or to receive healthcare services.

99.    Defendant knew, or should have known, of the risks inherent in collecting and storing the PII and PHI of Plaintiffs and Class Members.

100.  As described above, Defendant owed duties of care to Plaintiffs and Class Members whose PII and PHI had been entrusted with Defendant.

101.  Defendant breached its duties to Plaintiffs and Class Members by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiffs' and Class Members' PII and PHI.

102.  Defendant acted with wanton disregard for the security of Plaintiffs' and Class Members' PII and PHI. Defendant knew or should have known that Defendant had inadequate computer systems and data security practices to safeguard such information, and Defendant knew or should have known that hackers were lying in wait and/or attempting to access the PII and PHI in healthcare databases, such as Defendant's.

103.  A "special relationship" exists between Defendant and the Plaintiffs and Class Members.  Defendant Lincare entered into a "special relationship" with Plaintiffs and Class Members because it collected and/or stored the PII and/or PHI of Plaintiffs and the Class Members, which it and stored in its database – information that Plaintiffs and the Class Members had been required to provide to Defendant by way of its related healthcare services.

104.  But for Defendant's wrongful and negligent breach of its duties owed to Plaintiffs and the Class Members, Plaintiffs and the Class Members would not have been injured.

105.  The injury and harm suffered by Plaintiffs and Class Members was the reasonably foreseeable result of Defendant's breach of its duties.  Defendant knew or should have known it was failing to meet its duties, and that Defendant's breach would of such duties cause Plaintiffs and Class Members to experience the foreseeable harms associated with the exposure of their PII and PHI.

106.  As a direct and proximate result of Defendant's negligent conduct, Plaintiffs and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial.

## COUNT II

### Negligence *Per Se*
### (On Behalf of Plaintiffs and the Nationwide Class)

107. Plaintiffs re-allege and incorporate the allegations contained in paragraphs 1 through 96, above, by reference.

108. Pursuant to the Federal Trade Commission Act (15 U.S.C. §45), Defendant had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiffs' and Class Members' PII and PHI. Plaintiffs are members of the class that is intended to be protected by the Federal Trade Commission Act.

109. Pursuant to HIPAA (42 U.S.C. §1302d et. seq.), Defendant had a duty to implement reasonable safeguards to protect Plaintiffs' and Class Members' PII and PHI. Plaintiffs are members of the class that is intended to be protected by HIPAA.

110. Defendant breached its duties to Plaintiffs and Class Members under the Federal Trade Commission Act (15 U.S.C. § 45) and HIPAA (42 U.S.C. § 1302d *et. seq.*), by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiffs' and Class Members' PII and PHI.

111. Defendant's failure to comply with applicable laws and regulations constitutes negligence *per se*.

112. But for Defendant's wrongful and negligent breach of its duties owed to Plaintiffs and Class Members, Plaintiffs and Class Members would not have been injured.

113. The injury and harm suffered by Plaintiffs and Class Members was the reasonably foreseeable result of Defendant's breach of its duties. Defendant knew or should have known that it was failing to meet its duties, and that Defendant's breach would cause Plaintiffs and Class Members to experience the foreseeable harms associated with the exposure of their PII and PHI.

114. As a direct and proximate result of Defendant's negligent conduct, Plaintiffs and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial.

## COUNT III

### Breach of Implied Contract
### (On Behalf of Plaintiffs and the Nationwide Class)

115. Plaintiffs re-allege and incorporate the allegations contained in paragraphs 1 through 96, above, by reference.

116. Plaintiffs and Class Members entered into an implied contract with Defendant when they obtained or purchased healthcare related services from Defendant's and/or its healthcare providers, and for which they were required to provide their PII and PHI. The PII and PHI provided by Plaintiffs and Class Members that was collected and stored by Defendant was governed by and subject to privacy duties and policies.

117. Defendant implicitly and/or expressly agreed and was under a duty to safeguard and protect the PII and PHI of Plaintiffs and Class Members and to timely and accurately notify them in the event that their PII or PHI was breached or otherwise compromised.

118. Plaintiffs and Class Members entered into the implied contracts with the reasonable expectation that Defendant's data security practices and policies were reasonable and consistent with industry standards. Plaintiffs and Class members believed that Defendant would use part of the monies paid to Defendant under the implied contracts to fund adequate and reasonable data security practices.

119. Plaintiffs and Class Members would not have obtained healthcare services from Lincare's affiliated healthcare providers or entrusted their PII and PHI which was provided to and stored by Defendant in the absence of the implied contract or implied terms between them and Lincare and its affiliated healthcare providers. The safeguarding of the PII and PHI of Plaintiffs and Class Members and prompt and sufficient notification of a breach was critical to realize the intent of the parties.

120. Plaintiffs and Class Members fully performed their obligations under the implied contracts.

121. Defendant breached its implied contracts with Plaintiffs and Class Members to protect their PII and PHI when it (1) failed to have security protocols and measures in place to

protect that information; (2) disclosed that information to unauthorized third parties; and (3) failed to provide timely and accurate notice that their PII and PHI was compromised as a result of the Data Breach.

122.  As a direct and proximate result of Defendant's breaches of implied contract, Plaintiffs and Class Members sustained actual losses and damages as described in detail above and are also entitled to recover nominal damages.

## COUNT IV

**Unjust Enrichment**
**(On Behalf of Plaintiffs and the Nationwide Class)**

123.  Plaintiffs re-allege and incorporate the allegations contained in paragraphs 1 through 96, above as if fully set forth herein.

124.  Plaintiffs bring this claim individually and on behalf of all Class Members.

125.  This count is plead in the alternative to the breach of implied contract count, the fourth count listed in this Complaint.

126.  Upon information and belief, Defendant funds its data security measures entirely from its general revenue, including payments made by or on behalf of Plaintiffs and the Class Members.

127.  As such, a portion of the payments made by or on behalf of Plaintiffs and the Class Members is to be used to provide a reasonable level of data security, and the amount of the portion of each payment made that is allocated to data security is known to Defendant.

128.  Plaintiffs and Class Members conferred a monetary benefit on Defendant. Specifically, they purchased goods and services from Defendant and/or its agents and in so doing provided Defendant with their PII and PHI.  In exchange, Plaintiffs and Class Members should have received from Defendant the goods and services that were the subject of the transaction and have their PII and PHI protected with adequate data security.

129.  Defendant knew that Plaintiffs and Class Members conferred a benefit which Defendant accepted. Defendant profited from these transactions and used the PII and PHI of Plaintiffs and Class Members for business purposes.

130. In particular, Defendant enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiffs' and Class Members' PII and PHI. Instead of providing a reasonable level of security that would have prevented the hacking incident, Defendant instead calculated to increase its own profits at the expense of Plaintiffs and Class Members by utilizing cheaper, ineffective security measures. Plaintiffs and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's decision to prioritize its own profits over the requisite security.

131. Under the principles of equity and good conscience, Defendant should not be permitted to retain the money belonging to Plaintiffs and Class Members, because Defendant failed to implement appropriate data management and security measures that are mandated by industry standards.

132. Defendant failed to secure Plaintiffs' and Class Members' PII and PHI and, therefore, did not provide full value for the benefit Plaintiffs and Class Members provided.

133. Defendant acquired the PII and PHI through inequitable means in that it failed to disclose the inadequate security practices previously alleged.

134. If Plaintiffs and Class Members knew that Defendant had not reasonably secured their PII and PHI, they would not have agreed to provide their PII and PHI to Defendant.

135. Plaintiffs and Class Members have no adequate remedy at law for some of the harm Defendant caused.

136. As a direct and proximate result of Defendant's conduct, Plaintiffs and Class Members have suffered and will suffer injury, including but not limited to: (a) actual identity theft; (b) the loss of the opportunity of how their Private Information is used; (c) the compromise, publication, and/or theft of their PII and/or PHI; (d) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their PII and/or PHI; (e) lost opportunity costs associated with efforts expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (f) the continued risk to their PII and/or PHI, which remains in Defendant's

possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect PII and PHI in its continued possession; and (g) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII and PHI compromised as a result of the Data Breach for the remainder of the lives of Plaintiffs and Class Members.

137. As a direct and proximate result of Defendant's conduct, Plaintiffs and Class Members have suffered and will continue to suffer other forms of injury and/or harm.

138. Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiffs and Class Members, proceeds that it unjustly received from them. In the alternative, Defendant should be compelled to refund the amounts that Plaintiffs and Class Members overpaid for its services.

### COUNT V

**Breach of Fiduciary Duty**
**(On Behalf of Plaintiffs and the Nationwide Class)**

139. Plaintiffs re-allege and incorporate the allegations contained in paragraphs 1 through 96, above, as if fully set forth herein.

140. In light of the special relationship between Defendant and Plaintiffs and Class Members, whereby Defendant became guardian of Plaintiffs and Class Members' PII and PHI, Defendant became a fiduciary by its undertaking and guardianship of the PII and PHI, to act primarily for Plaintiffs and Class Members, (1) for the safeguarding of Plaintiffs and Class Members' PII and PHI; (2) to timely notify Plaintiffs and Class Members of a Data Breach and disclosure; and (3) to maintain complete and accurate records of what information (and where) Defendant did and does store.

141. Defendant has a fiduciary duty to act for the benefit of Plaintiffs and Class Members upon matters within the scope of its relationship with its patients, in particular, to keep secure their PII and PHI.

142.  Defendant breached its fiduciary duties to Plaintiffs and Class Members by failing to diligently discovery, investigate, and give notice of the Data Breach in a reasonable and practicable period.

143.  Defendant breached its fiduciary duties to Plaintiffs and Class Members by failing to encrypt and otherwise protect the integrity of the systems containing Plaintiffs' and Class Members' PII and PHI.

144.  Defendant breached its fiduciary duties owed to Plaintiffs and Class Members by failing to timely notify and/or warn Plaintiffs and Class Members of the Data Breach.

145.  Defendant breached its fiduciary duties to Plaintiffs and Class Members by otherwise failing to safeguard Plaintiffs' and Class Members' PII and PHI.

146.  As a direct and proximate result of Defendant's breaches of its fiduciary duties, Plaintiffs and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the compromise, publication, and/or theft of their PII and/or PHI; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft and/or unauthorized use of their PII and/or PHI; (iv) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (V) the continued risk to their PII and/or PHI, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII and/or PHI in its continued possession; (vi) future costs in terms of time, effort, and money that will be expended as result of the Data Breach for the remainder of the lives of Plaintiffs and Class Members; and (vii) the diminished value of the services they received.

147.  As a direct and proximate result of Defendant's breach of its fiduciary duties, Plaintiffs and Class Members have suffered and will continue to suffer other forms of injury and/or harm, and other economic and non-economic losses.

## COUNT VI

**Violations of New York General Business Law § 349**
**(On Behalf of Plaintiff Miller and the New York Class)**

148.  Plaintiff Miller re-alleges and incorporates the allegations contained in paragraphs 1 through 96, above as if fully set forth herein.

149.  Defendant engaged in deceptive, unfair, and unlawful trade acts or practices in the conduct of trade or commerce and furnishing of services, in violation of N.Y. Gen. Bus. Law § 349(a), including but not limited to the following:

   a.  Defendant actively and knowingly misrepresented or omitted disclosure of material information to Plaintiff Miller and the New York Class at the time they provided such PII and PHI that Defendant did not have sufficient security or mechanisms to protect PII and PHI.

   b.  Defendant misrepresented material facts to Plaintiff Miller and the New York Class by representing that it would maintain adequate data privacy and security practices and procedures to safeguard the PII and/or PHI of Plaintiff Miller and the New York Class from unauthorized disclosure, release, data breaches, and theft;

   c.  Defendant misrepresented material facts to Plaintiff Miller and the New York Class by representing that it did and would comply with the requirements of federal and state laws pertaining to the privacy and security of the PII and PHI of Plaintiff Miller and the New York Class;

   d.  Defendant omitted, suppressed, and concealed material facts of the inadequacy of its privacy and security protections for the PII and PHI of Plaintiff Miller and the New York Class;

   e.  Defendant engaged in deceptive, unfair, and unlawful trade acts or practices by failing to maintain the privacy and security of the PII and PHI of Plaintiff Miller and the New York Class, in violation of duties imposed by and public policies reflected in applicable federal and state laws, resulting in the Data Breach.

These unfair acts and practices violated duties imposed by laws including the Federal Trade Commission Act (15 U.S.C. § 45); and

f. Defendant engaged in deceptive, unfair, and unlawful trade acts or practices by failing to disclose the Data Breach to Plaintiff Miller and the New York Class in a timely and accurate manner, contrary to the duties imposed by N.Y. Gen. Bus. Law § 899-aa(2).

150. Defendant knew or should have known that its computer systems and data security practices were inadequate to safeguard the PII and PHI that Plaintiff Miller and the New York Class entrusted to Defendant, and that risk of a data breach or theft was highly likely.

151. Defendant should have disclosed this information because Defendant was in a superior position to know the true facts related to its defective data security.

152. Defendant's failure constitutes false and misleading representations, which have the capacity, tendency, and effect of deceiving or misleading consumers (including Plaintiff Miller and the New York Class) regarding the security of Defendant's network and aggregation of PII and PHI.

153. The representations upon which consumers (including Plaintiff Miller and the New York Class) relied were material representations (*e.g.*, as to Defendant's adequate protection of PII and PHI), and consumers (including Plaintiff Miller and the New York Class) relied on those representations to their detriment.

154. Defendant's conduct is unconscionable, deceptive, and unfair, as it is likely to, and did, mislead consumers acting reasonably under the circumstances. As a direct and proximate result of Defendant's conduct, Plaintiff Miller and the New York Class have been harmed, in that they were not timely notified of the Data Breach, which resulted in profound vulnerability to their PII and PHI.

155. As a direct and proximate result of Defendant's unconscionable, unfair, and deceptive acts and omissions, the PII and/or PHI of Plaintiff Miller and the New York Class was disclosed to third parties without authorization, which has caused and will continue to cause damage to Plaintiff Miller and the New York Class.

156. As a direct and proximate result of Defendant's violations of N.Y. Gen. Bus. Law § 349, Plaintiff Miller and New York Class members suffered damages including, but not limited to:

    a. Unauthorized use of their PII and/or PHI;

    b. Theft of the PII and/or PHI;

    c. Costs associated with the detection and prevention of identity theft and unauthorized use of their PII and PHI;

    d. Damages arising from the inability to use their PII and/or PHI;

    e. Costs associated with time spent and the loss of productivity or the enjoyment of one's life from taking time to address an attempt to ameliorate, mitigate and deal with the actual and future consequences of the Data Breach;

    f. The imminent and certainly impending injury flowing from potential fraud and identity theft posed by their PII and PHI being placed in the hands of criminals; and

    g. Damages to and diminution in value of their PII and PHI entrusted to Defendant and the loss of Plaintiff Miller's and New York Class Members' privacy.

157. Plaintiff Miller and the New York Class seek relief under N.Y. Gen. Bus. Law § 349(h), including, but not limited to, actual damages, treble damages, statutory damages, injunctive relief, and/or attorneys' fees and costs.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the Class Members, seek the following relief:

A.    An order certifying this action as a class action under Fed. R. Civ. P. 23, defining the Class as requested herein, appointed the undersigned as Class counsel, and finding that Plaintiffs is are the proper representatives of the Class requested herein.

B.      Plaintiffs request injunctive relief.  Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class Members, including:

i.      an order prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

ii.     requiring Defendant to protect all data collected or received through the course of its business in accordance with HIPAA regulations, other federal, state and local laws, and best practices under industry standards;

iii.    requiring Defendant to design, maintain, and test its computer systems to ensure that PII and PHI in its possession is adequately secured and protected;

iv.     requiring Defendant to disclose any future data breaches in a timely and accurate manner;

v.      requiring Defendant to engage third-party security auditors as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis and ordering them to promptly correct any problems or issues detected by these auditors;

vi.     requiring Defendant to audit, test, and train its security personnel to run automated security monitoring, aggregating, filtering and reporting on log information in a unified manner;

vii.    requiring Defendant to implement multi-factor authentication requirements;

viii.   requiring Defendant's employees to change their passwords on a timely and regular basis, consistent with best practices;

ix.     requiring Defendant to encrypt all PII and PHI;

x.      requiring Defendant to audit, test, and train its security personnel regarding any new or modified procedures;

xi.    requiring Defendant to segment data by, among other things, creating firewalls and access controls so that if one area of its network is compromised, hackers cannot gain access to other portions of its systems;

xii.    requiring Defendant to purge, delete, and destroy in a reasonably secure and timely manner PII and PHI no longer necessary for its provision of services;

xiii.    requiring Defendant to conduct regular database scanning and securing checks;

xiv.    requiring Defendant to routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

xv.    requiring Defendant to provide lifetime credit monitoring and identity theft repair services to members of the Class; and

xvi.    requiring Defendant to educate all Class Members about the threats they face as a result of the loss of their PII and PHI to third parties, as well as steps Class Members must take to protect themselves.

C.    Plaintiffs also request actual damages, punitive damages, treble damages, statutory damages, exemplary damages, equitable relief, restitution, disgorgement of profits, attorneys' fees, statutory costs, and such other and further relief as is deemed just and proper.

## VIII.    DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all triable issues.

DATED:  September 14, 2022                Respectfully submitted,

**GEORGE GESTEN MCDONALD, PLLC**

*/s/ David J. George*
DAVID J. GEORGE
Florida Bar No. 898579
dgeorge@4-justice.com
eservice@4-justice.com
9897 Lake Worth Road, Suite 302

Lake Worth FL 33467
Telephone: (561) 232-6002

LORI G. FELDMAN*
102 Half Moon Bay Drive
Croton-on-Hudson, NY 10520
Telephone: (917) 983-9321
lfeldman@4-justice.com
eservice@4-justice.com

**BARRACK, RODOS & BACINE**
STEPHEN R. BASSER*
SAMUEL M. WARD*
600 West Broadway, Suite 900
San Diego, CA  92101
sbasser@barrack.com
sward@barrack.com
Telephone:  (619) 230-0800
Facsimile:   (619) 230-1874

**EMERSON FIRM, PLLC**
JOHN G. EMERSON*
2500 Wilcrest, Suite 300
Houston, TX 77042
jemerson@emersonfirm.com
Telephone: (800) 551-8649
Facsimile: (501) 286-4659

*Counsel for Plaintiffs*
*Pro Hac Vice* application to be filed